1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SMILEY MARTIN,                              No.  2: 18-cv-1658 KJN P

12                 Plaintiff,

13          v.                                   ORDER AND FINDINGS AND
                                                 RECOMMENDATIONS
14   J. HER,

15                 Defendant.

16

17       I.      Introduction

18          Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19   to 42 U.S.C. § 1983.  Pending before the court is defendant Her's summary judgment motion.

20   (ECF No. 33.)  For the reason stated herein, the undersigned recommends that defendant's motion

21   be granted in part and denied in part.

22          On October 3, 2019, the undersigned granted plaintiff thirty days to file his opposition to

23   defendant's summary judgment motion.  (ECF No. 36.)  On October 10, 2019, plaintiff filed a

24   three pages long opposition to defendant's summary judgment motion.  (ECF No. 37.)  On

25   October 17, 2019, defendant filed a reply to plaintiff's opposition.  (ECF No. 38.)

26          On October 18, 2019, plaintiff filed a response to defendant's statement of undisputed

27   facts.  (ECF No. 39.)  On October 24, 2019, defendant filed a reply to plaintiff's response to

28   defendant's statement of undisputed facts.  (ECF No. 40.)  Defendant argues, in part, that

                                              1

1  plaintiff's response should be stricken as untimely because it was filed after the summary

2  judgment motion was submitted for decision.

3      It is not clear why plaintiff failed to include his response to defendant's statement of

4  undisputed facts with the opposition he filed on October 10, 2019.  However, the undersigned

5  herein considers plaintiff's response because it was filed within the thirty days the undersigned

6  granted plaintiff to file his opposition.  In addition, consideration of the response assists the

7  undersigned in evaluating defendant's summary judgment motion.  It also does not appear that

8  consideration of plaintiff's response prejudices defendant.  For these reasons, defendant's request

9  that the undersigned strike plaintiff's response to defendant's statement of undisputed facts is

10  denied.

11      II.      Legal Standard for Summary Judgment

12      Summary judgment is appropriate when it is demonstrated that the standard set forth in

13  Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

14  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

15  judgment as a matter of law."  Fed. R. Civ. P. 56(a).

16  
> Under summary judgment practice, the moving party always bears
> the initial responsibility of informing the district court of the basis
> for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

20  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

21  56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

22  only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

23  Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

24  387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

25  committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

26  burden of production may rely on a showing that a party who does have the trial burden cannot

27  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

28  should be entered, after adequate time for discovery and upon motion, against a party who fails to

2

1   make a showing sufficient to establish the existence of an element essential to that party's case,

2   and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

3   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

4   necessarily renders all other facts immaterial."  Id. at 323.

5          Consequently, if the moving party meets its initial responsibility, the burden then shifts to

6   the opposing party to establish that a genuine issue as to any material fact actually exists.  See

7   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

8   establish the existence of such a factual dispute, the opposing party may not rely upon the

9   allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

10  form of affidavits, and/or admissible discovery material in support of its contention that such a

11  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

12  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

13  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

14  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

15  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

16  a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

17  (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

18  1564, 1575 (9th Cir. 1990).

19         In the endeavor to establish the existence of a factual dispute, the opposing party need not

20  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

21  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

22  trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

23  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

24  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

25  amendments).

26         In resolving a summary judgment motion, the court examines the pleadings, depositions,

27  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

28  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on July 12, 2018 (ECF No. 11), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

III.      Plaintiff's Claims

This action proceeds on plaintiff's original verified complaint filed June 7, 2018, against defendant Her, an officer at the Sacramento County Jail.  (ECF No. 1.)

Plaintiff alleges that on January 28, 2018, defendant Her allowed inmates in a rival gang to attack plaintiff.  Plaintiff alleges that when defendant Her served the morning meal, he was supposed to release half a tier at one time.  On the morning of January 28, 2018, plaintiff alleges that defendant Her released the entire top tier.  When plaintiff came out, plaintiff was surrounded by other inmates who attacked plaintiff.  Plaintiff alleges that he had hot water thrown on him and received a second degree burn on his right hip.  Plaintiff alleges that after the fight, the loudspeaker came on and defendant Her told the inmates to go back to their cells and stop acting like it's a jungle.  Plaintiff alleges that he returned to his cell.  Plaintiff alleges that "the police" did not report the incident or check to see if "we were injured or if the situation was going to escalate and possibly be another riot.  I was hurt and he left me in a dangerous predicament."

////

4

Plaintiff alleges that after the incident, he filed a complaint on defendant Her for neglecting the inmates.  Officer Jackson signed the grievance.  When defendant Her saw the grievance, he came to plaintiff's cell, woke plaintiff up, and argued with plaintiff about the grievance.  After defendant Her left plaintiff's cell, defendant Her told another inmate to tell plaintiff that if he (plaintiff) did not throw out the grievance, defendant Her would make sure that all the inmates get gang enhancements and another strike.

Plaintiff told the nurse who treated plaintiff's second degree burn about the incident. After that, defendant Her told the inmates to tell plaintiff that he already wrote a report and if plaintiff kept talking about it, plaintiff would get extra charges.  Plaintiff kept getting threats from other inmates who were scared they would get extra charges.

Plaintiff alleges that defendant Her violated his Eighth and Fourteenth Amendment rights by failing to protect him from harm by other inmates.  The undersigned finds that plaintiff alleges three different Eighth Amendment claims.  First, plaintiff alleges that defendant Her wrongly allowed rival inmate gang members to retrieve their breakfasts at the same time as plaintiff. Second, plaintiff alleges that defendant Her failed to enter the pod to deescalate the fight.  Third, plaintiff alleges that defendant Her failed to report the fight after he was made aware of it.

Plaintiff also alleges that defendant retaliated against him for filing a grievance.

IV.     Discussion-Plaintiff's Eighth Amendment Claims

As discussed herein, it is undisputed that at the time of the alleged incident, plaintiff was a sentenced prisoner waiting to be transferred to state prison.  Therefore, plaintiff's failure to protect claims are analyzed under the Eighth Amendment.

A.   Legal Standard

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  Farmer v. Brennan, 511 U.S. 825, 833 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and

5

1    disregard a substantial risk of serious harm to the plaintiff.  E.g., Farmer, 511 U.S. at 847; Hearns,

2    413 F.3d at 1040.

3        To establish a violation of this duty, the prisoner must establish that prison officials were

4    "deliberately indifferent to a serious threat to the inmate's safety."  Farmer, 511 U.S. at 834.  The

5    question under the Eighth Amendment is whether prison officials, acting with deliberate

6    indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his future

7    health.  Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)).  The Supreme Court has

8    explained that "deliberate indifference entails something more than mere negligence...[but]

9    something less than acts or omissions for the very purpose of causing harm or with the knowledge

10   that harm will result."  Farmer, 511 U.S. at 835.  The Court defined this "deliberate indifference"

11   standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is

12   aware."  Id. at 836-37.

13       The deliberate indifference standard involves both an objective and a subjective prong.

14   First, the alleged deprivation must be, in objective terms, "sufficiently serious."  Id. at 834.

15   Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate

16   health or safety."  Id. at 837.  To prove knowledge of the risk, however, the prisoner may rely on

17   circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish

18   knowledge.  Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

19       B.   Did Defendant Her Act With Deliberate Indifference When He Released Plaintiff To

20            Breakfast?

21       *Undisputed Facts*

22       Undisputed Fact No. 1:  Inmates in the Sacramento County Jail (hereinafter "Jail") are

23   housed according to their classification.  (ECF No. 39 at 3.)

24       Undisputed Fact No. 2:  The term "classification" refers to the Jail's procedure of

25   documenting certain inmate characteristics for use in the Housing Plan.  (Id.)  These

26   characteristics include physical characteristics, including gender, age, mental and medical

27   conditions; criminal history, including gang affiliation; legal status; gravely disabled status;

28   notoriety; and criminal sophistication.  (Id.)

6

Undisputed Fact No. 3:  One of the purposes of the classification system is to try and house "like" gang affiliated individuals in the same pod in an attempt to minimize potential gang violence in the jail.  (Id.)

Undisputed Fact No. 4:  Defendant Her is not a classification officer and therefore he is unaware of the specific inmate classifications within the pods he supervises.  (Id.)

Undisputed Fact No. 5:  At the time of the underlying facts of the instant matter, plaintiff was a sentenced prisoner awaiting transfer to a California correctional facility to serve his criminal sentence.  (Id.)

Undisputed Fact No. 6:  Plaintiff was housed in the 6 West 300 Pod of the Jail.  (Id.)

Undisputed Fact No. 7:  The deputy assigned to the control booth on the west side of the sixth floor is responsible for opening the cell doors for the 6 West 100, 6 West 200 and 6 West 300 pods so that inmates can retrieve their food for breakfast from the common area.  (Id. at 3-4.)

Undisputed Fact No. 8:  Once released into the common area, inmates are supposed to retrieve their food and return to their cells to eat.[1]  (Id. at 4.)

Undisputed Fact No. 9:  There is no rule regarding the maximum or minimum number of inmates that can be released into the common area at a time during breakfast.  (Id.)  This decision is left to the discretion of the control booth deputy.  (Id.)

Undisputed Fact No. 10:  Typically, the control booth deputy will release a portion of the first pod, verify that everything appears to be running smoothly, and then will continue on to the next pod until all inmates in all three pods have received their morning meal.[2]  (Id.)

Undisputed Fact No. 11:  On January 28, 2018, defendant Her was assigned to the control booth for the 6 West 100, 6 West 200 and 6 West 300 pods.  (Id.)

Undisputed Fact No. 12:  Defendant Her served breakfast according to the Jail's Meal

---

[1]  In response to defendant's undisputed fact no. 8, plaintiff allege that on the morning of the incident, the inmates did not return to their cells.  (Id.)  Plaintiff does not dispute that inmates are supposed to return to their cells after retrieving their food.

[2]  In response to defendant's undisputed fact no. 10, plaintiff alleges that on the morning of the incident, the inmates did not return to their cells.  (Id.)  Plaintiff does not dispute the statement contained in defendant's undisputed fact no. 10.

1  Counts and Service Operations Order and his normal procedure on January 28, 2018.  (Id.)

2  Undisputed Fact No. 13:  There is a video camera in the 6 West 300 common area that

3  recorded events that occurred during breakfast on January 28, 2018.  (Id.)

4  Undisputed Fact No. 14:  On January 28, 2018, defendant Her first opened the cell doors

5  for the two housemen in 6 West 300 pod to prepare to serve the morning meal to the other

6  inmates.  (Id. at 4-5.)

7  Undisputed Fact No. 15:  After releasing the housemen defendant Her released the

8  inmates from the bottom tier of 6 West 300 pod to retrieve their morning meal from the common

9  area.  (Id. at 5.)

10  Undisputed Fact No. 16:  Once the majority of inmates from the bottom tier had grabbed

11  their breakfast defendant Her released the top tier inmates to retrieve their food from the common

12  area.[3]  (Id.)

13  Undisputed Fact No. 17:  Plaintiff was among the top tier inmates released to retrieve

14  food.  (Id.)

15  Undisputed Fact No. 18:  After receiving his food, plaintiff stopped at the foot of the stairs

16  to talk to an inmate named "Malik."  (Id.)

17  Undisputed Fact No. 19:  While plaintiff was speaking to Malik a third inmate approached

18  Malik from behind and began to punch Malik in the head.  (Id.)

19  Undisputed Fact No. 20:  Plaintiff set down his breakfast tray and began to punch inmates

20  that were surrounding him.  (Id. 5-6.)

21  Undisputed Fact No. 21:  During the fight an unknown inmate threw an insulated

22  beverage dispenser at plaintiff.  (Id. at 6.)

23  Undisputed Fact No. 22:  The dispenser contained hot water that burned plaintiff's right

24  hip.  (Id.)

25  _____

26  [3]  Plaintiff disputes defendant's undisputed fact no. 16 by stating that defendant Her knows that inmates use items to jam doors open to sneak out of their cell.  (Id.)  Plaintiff states that defendant

27  Her should ensure that all inmates are locked down after getting their trays and be alert if he knows inmates are sneaking out of their cells.  (Id.)  Plaintiff's response to defendant's

28  undisputed fact no. 16 does not dispute the fact alleged in this undisputed fact.

1    Undisputed Fact No. 23:  As recorded on the pod surveillance video, the fight was

2    approximately one minute long.  (Id.)

3    Undisputed Fact No. 25:  Defendant Her turned on the overhead lights in the pod when

4    Malik pushed the emergency button.  (Id.)

5    Undisputed Fact No. 26:  Defendant Her turned on the overhead lights in the pod after the

6    insulated beverage container was thrown at plaintiff.  (Id.)

7    Undisputed Fact No. 27:  Defendant Her released Malik from the pod common area after

8    he pushed the emergency call button.  (Id.)

9    Undisputed Fact No. 28:  Inmate Malik did not inform defendant Her that there had been a

10   fight or that plaintiff had been injured in a fight.[4]  (Id. at 6-7.)

11   Undisputed Fact No. 29:  At his deposition, plaintiff testified that inmate Malik never told

12   him that he told defendant Her that there had been a fight or that plaintiff may have been injured.

13   (Id. at 7.)

14   Undisputed Fact No. 30:  Defendant Her was unaware of any issues, classification or

15   otherwise, which could have indicated that a fight would occur if he let the top tier inmates out of

16   their cells while some bottom tier inmates still had access to the common area.  (Id.)

17   Undisputed Fact No. 31:  Defendant Her had not received any threats from inmates or

18   staff involving plaintiff or any other information which would have indicated that there were rival

19   gang members in the pod which caused an increased risk of a fight in the pod on January 28,

20   2018.  (Id.)

21       *Disputed Facts*

22   For the following reasons, the undersigned finds that whether defendant Her witnessed the

23   January 28, 2018 fight is a materially disputed fact.[5]

24   _____

25   [4]  While plaintiff does not dispute that inmate Malik did not tell defendant Her that there had been
     a fight or that plaintiff had been injured in a fight, plaintiff argues that inmate Malik's activation
26   of the emergency call button put defendant Malik on notice that an emergency existed.

27   [5]  Defendant's undisputed fact no. 24 erroneously states that defendant *did see* the fight occur.
     (ECF No. 39 at 6.)  In his declaration, defendant Her states that he *did not* see the fight occur.
28   ECF No. 33-4 at 3.)

1      In his declaration submitted in support of the summary judgment motion, defendant Her

2  states that he did not see the fight break out in the 6 West 300 pod and he did not see an insulated

3  beverage dispenser get thrown at plaintiff.  (ECF No. 33-4 at 3.)  In his declaration, defendant Her

4  states that he did not become aware of the fight until he received plaintiff's grievance on January

5  29, 2018.  (Id.)

6      In his verified complaint, plaintiff alleges that after the fight, defendant Her came on the

7  loudspeaker and told the inmates to go back to their cells and stop acting like it's a jungle.  (Id. at

8  6.)  While defendant Her allegedly made this statement after the fight, it is not unreasonable to

9  infer from this statement that defendant Her witnessed the fight.[6]  Accordingly, the undersigned

10  finds that whether defendant Her witnessed the fight is a materially disputed fact.

11     *Analysis*

12      Defendant argues that he did not act with deliberate indifference when he released

13  plaintiff to breakfast because he did not know of any heightened risk to plaintiff when he released

14  plaintiff and the other inmates into the common area for breakfast.   For the reasons stated herein,

15  the undersigned finds that defendant Her is entitled to summary judgment as to this claim.

16      As discussed above, it is undisputed that defendant Her was unaware of any issues which

17  could have indicated that a fight would occur if he let the top tier inmates out of their cells while

18  some bottom tier inmates still had access to the common area.  It is also undisputed that defendant

19  Her had received no threats from inmates or staff involving plaintiff or any other information

20  which would have indicated there were rival gang members in the pod which caused an increased

21  risk of fight in the pod on January 28, 2018.

22      At his deposition, plaintiff did not identify any specific threat of harm to his safety from

23  rival gang inmates on January 28, 2018.  Plaintiff testified that just before the incident, inmate

24  Malik told plaintiff "they following me."  (Plaintiff's deposition at 14.)

25         Q:  And why –did you have any idea why these individuals were

26         following him?

27

28

---

[6]   The undersigned has viewed the DVD of the fight submitted by defendant in support of the summary judgment motion.  The DVD does not contain audio.

1    A:  No, I just know there's always tension in there.

2    Q:  Okay.  When you say "there's always tension in there," for any particular reason?

3

4    A:  For thousands of reasons.  Just they're mixing –they're mixing different gangs.  They've got everybody in there.

5    Q:  Okay.  So you belief was that the tension was because they had different gang members, rival gang members in the same pod?

6

7    A:  Yeah.

     Q:  With Malik—but you don't know of anything that had happened
8    prior to the incident that would have made him a target; like he was talking to the deputies about stuff or people—

9
     A:  No, besides me?  I mean just don't get along.  I don't what he did
10   personally to where they don't like him.

11   Q:  Um-hum.

12   A:  But they knew that we were friends and we Crips, you feel me. And they're on the—their—their—they outnumber us.  That's all I –
13   that's all I see.

14

15   (Id. at 16-17.)

16        At his deposition, plaintiff also testified that he did not personally know the inmates who

17   attacked him and inmate Malik but he recognized their faces.  (Id. at 19.)

18        At his deposition, plaintiff testified that prior to the incident, he had been in "a lot of

19   fights" at the jail but he had not been booked for them.  (Id. at 21.)  Plaintiff had never filed a

20   grievance before the one he filed against defendant Her.  (Id.)  Plaintiff testified that while housed

21   in 6 West 300 pod, where the incident occurred, he had been involved in at least ten fights with

22   other inmates.  (Id. at 22.)  Plaintiff testified that none of these fights had "deputy responses."

23   (Id.)  This testimony suggests that jail officials were unaware of plaintiff's previous ten fights

24   while housed in 6 West 300 pod.

25        Plaintiff also testified that prior to the incident, he made no "clear complaints" about

26   feeling unsafe in the pod.  (Id. at 38.)  Plaintiff testified that at some time, he spoke with someone

27   to the gang unit and he was moved to the eighth floor.  (Id. at 38-39.)  It is unclear where plaintiff

28   was housed when this occurred.  However, plaintiff testified that he was later housed on the sixth

                                                    11

1   floor, where the incident occurred.  (Id. at 40.)

2
3
> Q:  So as far as when you were on 6, did anyone come and talk to you in that –prior to the fight, did anyone come and talk to you and ask do you want to be reclassed or moved?

4
> A:  No.

5
> Q:  Did you ever talk to anyone about feeling uncomfortable on 6?

6
7
8
> A:  No.  Nobody—I never been on the 6th floor prior to that so I don't even know how it was going to be.  I just know on every floor in every side of the jail, it's the same shit, so it doesn't matter where they house me.

9   (Id.)

10          The Ninth Circuit has held that inmates of opposite gangs placed in a cell with each other,

11   with nothing more, fails to satisfy the Eighth Amendment's standard that prison officials must be

12   aware of a specific risk to an inmate.  Labatad v. Corrections Corp. of America, 714 F.3d 1155,

13   1160 (9th Cir. 2013).  In the instant case, the undisputed evidence demonstrates that defendant

14   Her did not know of a specific risk of harm to plaintiff from the alleged rival gang members who

15   he fought with.

16          Assuming that the ten previous fights plaintiff had allegedly been in while housed in 6

17   West 300 pod were with rival gang members, there is no evidence that defendant Her knew of

18   these fights.  As discussed above, plaintiff testified that no deputies responded to these fights and

19   that he did not file grievances regarding these fights.  At most, plaintiff's deposition testimony

20   establishes a generalized fear of harm.  Plaintiff's generalized fear of harm does not demonstrate

21   an Eighth Amendment violation by defendant Her.  See Thompson v. Lee, 1:07-cv-1299 LJO

22   GSA P, 2015 WL 769683 (E.D. Cal. Feb. 23, 2015), findings and recommendations adopted July

23   16, 2015 (recommending that defendants be granted summary judgment as to plaintiff's Eighth

24   Amendment fail to protect claim on the grounds that the evidence demonstrated that plaintiff had

25   a generalized fear of harm); Fosselman v. Dimmer, 1: 12-cv-1302 DAD SAB P, 2017 WL

26   1254685, *19 (E.D. Cal. Feb. 17, 2017), findings and recommendation adopted March 23, 2017

27   (recommending that defendants be granted summary judgment as to plaintiff's fail to protect

28   claim on the grounds that the record contained no evidence that defendant knew that plaintiff

12

1  faced a specific or actual threat of harm from gang member); <u>Labatad v. Corrections Corp. of</u>

2  <u>America</u>, 714 F.3d at 1160-61 (even though a prison official was aware that inmates of opposite

3  gangs were placed in a cell with each other, such knowledge, without more, fails to satisfy the

4  Eighth Amendment's requirement that an official be aware of a specific risk to an inmate).

5      For the reasons discussed above, defendant Her should be granted summary judgment as

6  to plaintiff's claim that he violated plaintiff's Eighth Amendment rights when he released plaintiff

7  to breakfast.

8      C.   <u>Did Defendant Her Act With Deliberate Indifference When He Allegedly Failed to</u>

9         <u>Enter the Pod To Deescalate The Fight ?</u>

10     Plaintiff alleges that defendant Her violated his Eighth Amendment right to be free from

11 harm by other inmates by failing to enter the pod to deescalate the fight.  Defendant Her moves

12 for summary judgment as to this claim on the grounds that he did not see the fight.

13     As discussed above, whether defendant Her witnessed the fight is a materially disputed

14 fact.  Based on the current record, the undersigned cannot find that defendant Her did not violate

15 the Eighth Amendment if he witnessed the fight and failed to take adequate and prompt steps to

16 deescalate the fight.[7]  Accordingly, defendant Her should be denied summary judgment as to this

17 claim.

18     D.   <u>Did Defendant Her Act With Deliberate Indifference When He Allegedly Failed To</u>

19         <u>Report The Fight?</u>

20     Defendant Her argues that he is entitled to summary judgment as to plaintiff's claim that

21 he acted with deliberate indifference by failing to report the fight on the grounds that he did not

22 see the fight.[8]  Defendant Her moves for summary judgment as to this claim on the grounds that

23 _____

24 [7]  The record contains no evidence regarding how defendant Her could have intervened in the fight that had such a short duration.  The undersigned presumes that defendant Her could have, at

25 the very least, sounded an alarm.  However, the undersigned need not reach the issue of how or whether defendant Her could have responded to the fight because this issue is not addressed in

26 defendant's summary judgment motion.

27 [8]  Plaintiff does not allege that defendant Her violated his Eighth Amendment right to adequate medical care by failing to look into his injuries after the fight.  Plaintiff's complaint alleges only

28 Eighth Amendment claims based on fail-to-protect theories.  (<u>See</u> ECF No. 1 at 3.)

1    that he was not aware that there was a fight in the pod until he received plaintiff's grievance the

2    following day.

3          As discussed above, whether defendant Her witnessed the fight is a materially disputed

4    fact.  Based on the current record, if defendant Her witnessed the fight, the undersigned cannot

5    find that he did not act with deliberate indifference by failing to report it.  Accordingly, defendant

6    Her should be denied summary judgment as to this claim.[9]

7          E.    Qualified Immunity

8                *Legal Standard*

9          "The doctrine of qualified immunity protects government officials 'from liability for civil

10   damages insofar as their conduct does not violate clearly established statutory or constitutional

11   rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223,

12   231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In determining whether a

13   defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by

14   plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly

15   established at the time of the officer's alleged misconduct.  Pearson, 555 U.S. at 232.  To be

16   clearly established, a right must be sufficiently clear "that every 'reasonable official would [have

17   understood] that what he is doing violates that right.'" Reichle v. Howards, 566 U.S. 658, 664

18   (2012) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).

19   ////

20   ////

---

21   [9] The undersigned also observes that it is undisputed that defendant Her released inmate Malik
     from the pod common area after the fight when inmate Malik pushed the emergency call button.
22   At his deposition, plaintiff testified regarding the circumstances under which inmates are allowed
     to leave the pod when they press the emergency button:  "So the only way you're going to be able
23   to leave like that is you telling him.  He might not have said – I don't know what he said exactly
     but he had to say he feared for his safety in some type of way for him to leave." (Plaintiff's
24   deposition at 26.)
25          According to plaintiff's deposition testimony, inmates are allowed to leave the pod after
     pushing the emergency button only if they can demonstrate a fear for their safety or some other
26   type of emergency.  Defendant Her does not address the circumstances under which inmates may
     leave the pod after pushing the emergency button.  Plaintiff's deposition testimony suggests that
27   inmate Malik's use of the emergency button may be further evidence of defendant Her's
     knowledge of the fight on the morning it occurred.
28

1    *Discussion*

2        Defendant Her moves for qualified immunity as to plaintiff's Eighth Amendment claims.

3    As discussed above, the undersigned finds that defendant Her should be granted summary

4    judgment as to plaintiff's claim alleging that defendant Her violated his Eighth Amendment rights

5    when he released plaintiff to breakfast.  Accordingly, the undersigned need not address the issue

6    of qualified immunity any further as to this claim.

7        The undersigned recommended that defendant's motion for summary judgment be denied

8    as to plaintiff's Eighth Amendment claims alleging that defendant Her failed to intervene after the

9    fight broke out and failed to report the fight.  Accordingly, the undersigned herein considers

10   whether defendant Her is entitled to qualified immunity as to these claims.

11       In determining whether the facts shown by plaintiff make out a violation of a

12   constitutional right, the court must take the facts in the light most favorable to plaintiff.  See

13   Saucier v. Katz, 533 U.S. 194, 201 (2001).  Taking the facts in the light most favorable to

14   plaintiff, the undersigned finds that defendant Her allegedly witnessed the fight and violated

15   plaintiff's Eighth Amendment rights when he failed to intervene.

16       As discussed above, defendant does not address how he could have intervened in a fight

17   that lasted less than one minute.  Nevertheless, the undersigned finds that a reasonable officer

18   would know that failing to take any steps to intervene in the fight violated the Eighth

19   Amendment.  Accordingly, defendant Her is not entitled to qualified immunity as to this claim.

20       Taking the facts in the light most favorable to plaintiff, the undersigned finds that

21   defendant Her allegedly witnessed the fight and violated plaintiff's Eighth Amendment rights by

22   failing to report the fight.  The undersigned also finds that a reasonable officer would know that

23   failing to report the fight violated the Eighth Amendment.  Accordingly, defendant Her is not

24   entitled to qualified immunity as to this claim.

25   V.  Retaliation Claim

26       A.   Legal Standard

27        To prevail on a retaliation claim, a plaintiff must allege and prove the defendants

28   retaliated against him for exercising a constitutional right and the retaliatory action did not

15

advance legitimate penological goals or was not narrowly tailored to achieve such goals.  Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997).  A prisoner suing a prison official under § 1983 for retaliation for engaging in protected speech must allege "the type of activity he engaged in was protected under the first amendment and that the state impermissibly infringed on his right to engage in the protected activity."  Rizzo v. Dawson, 778 F.2d 527 (9th Cir. 1983).

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005).  "Mere speculation that defendants acted out of retaliation is not sufficient."  Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014).

### B.  Undisputed Facts

Undisputed Fact No. 32:  When defendant Her arrived for his shift on January 29, 2018, he received plaintiff's grievance.  (ECF No. 39 at 7.)

Undisputed Fact No. 38:  All alleged retaliatory or threatening statements were relayed to plaintiff second-hand from prisoners.  (Id. at 8.)

Undisputed Fact No. 39:  Defendant Her does not have the authority to unilaterally impose extra strikes, gang enhancements or extra charges on inmates.  (Id.)

Undisputed Fact No. 40:  Defendant Her did not conspire to have plaintiff transferred to Solano Prison in retaliation for his grievance.  (Id.

Undisputed Fact No. 41:  Defendant Her has no input on when inmates are transferred to correctional facilities to serve criminal sentences.  (Id.

Undisputed Fact No. 42:  Other than the alleged comments to housemen and transfer to Solano Prison, plaintiff does not allege that any adverse actions were taken against him in retaliation for his filing a grievance.  (Id. at 8-9.)

### C.  Plaintiff's Deposition Testimony

The undersigned summarizes plaintiff's deposition testimony regarding his retaliation claim herein.

Plaintiff testified that he initially gave his grievance to Officer Jackson on January 29, 2018. (Plaintiff's deposition at 29-30.) Officer Jackson gave plaintiff back the pink copy of the grievance. (Id. at 30.) Later on January 29, 2018, defendant Her came to plaintiff's cell around count time to talk to him about the grievance. (Id. at 31.) Plaintiff was sleeping when defendant Her came to plaintiff's cell. (Id. 31-32.)

Plaintiff testified that defendant Her asked him, "What's up with this grievance you wrote on me?" (Id. at 32.) Then defendant Her and plaintiff argued back and forth. (Id.) Plaintiff testified that defendant Her told him that he had not seen anything because the lights were off. (Id.)

Plaintiff testified that the houseman later approached him and told him that defendant Her said that if plaintiff did not throw out the grievance, he (defendant Her) would make sure that plaintiff and everybody in the incident got gang enhancements and extra strikes. (Id. at 51.) The houseman told plaintiff that his little brother had been involved in the incident and asked plaintiff to "throw out" the grievance. (Id. at 52.)

Plaintiff also testified that he believes that he (plaintiff) was sent to state prison faster in retaliation for filing his grievance against defendant Her. (Id. at 57.)

D. Analysis

Defendant moves for summary judgment as to plaintiff's retaliation claim on three grounds: 1) plaintiff's evidence of adverse action, i.e., defendant's alleged threats communicated to plaintiff by other inmates, is inadmissible hearsay; 2) the alleged threats did not constitute adverse action because defendant was incapable of executing them; and 3) plaintiff's First Amendment rights were not chilled because he did not drop the grievance after the threats were allegedly communicated to him by the other inmates.

*Is Plaintiff's Evidence of the Threats Inadmissible Hearsay?*

Hearsay is a statement made out of court and offered for the truth of the matter asserted therein. Fed. R. Evid. 801(c). However, "[i]f the significance of an out-of-court statement lies in the fact that the statement was made and not in the truth of the matter asserted, then the statement is not hearsay." Calmat Co. v. U.S. Dep't of Labor, 364 F.3d 1117, 1124 (9th Cir. 2004). Where

17

1    evidence presents a hearsay within hearsay problem, "each layer of hearsay must satisfy an

2    exception to the hearsay rule." <u>Sana v. Hawaiian Cruises, Ltd.</u>, 181 F.3d 1041, 1045 (9th Cir.

3    1999); <u>see also</u> Fed. R. Evid. 805.

4         Plaintiff's deposition testimony (and verified allegations in the complaint) regarding what

5    the houseman allegedly told him, and what defendant Her allegedly told the houseman, is not

6    hearsay because the significance of this out-of-court testimony lies in the fact the statements were

7    made and not in the truth of the matter asserted.  Plaintiff's testimony that the houseman told him

8    that defendant Her would make sure everyone got gang enhancements and extra strikes is not

9    offered for the truth of the statement, i.e., that defendant Her had the power to impose gang

10   enhancements or extra strikes.  Instead, this testimony is offered as evidence of the alleged threat

11   defendant Her allegedly made against plaintiff if he pursued his grievance.  Accordingly,

12   defendant's hearsay objection is without merit.

13        *Are Defendant's Alleged Threats an Adverse Action?*

14        Defendant argues that he should be granted summary judgment on the grounds that he was

15   incapable of carrying out the threats plaintiff alleges constituted the adverse action.  Plaintiff

16   alleged in his complaint and testified at his deposition that other inmates approached him and

17   stated that defendant Her told them that he (defendant Her) would give everyone (including

18   plaintiff) gang enhancements and extra strikes if plaintiff did not drop the grievance.  It is

19   undisputed that defendant Her does not have the authority to unilaterally impose extra strikes,

20   gang enhancements or extra charges on inmates

21        While defendant Her may not have the authority to unilaterally impose extra strikes, gang

22   enhancements or extra charges, he had the authority to report the fight which could have led to

23   criminal charges.  The undersigned finds that defendant Her's alleged threat to "make sure" that

24   everyone got strikes and gang enhancements was a threat to report the fight, and identify it as

25   gang related, which could have led to criminal charges as well as inmates retaliating against

26   plaintiff for pursuing his grievance.  Accordingly, the undersigned finds that the alleged threats

27   were sufficient adverse action.  <u>See</u> <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1270 (9th Cir. 2009)

28   ("[T]he mere threat of harm can be an adverse action, regardless of whether it is carried out

18

1   because the threat itself can have a chilling effect."); Hartman v. Moore, 547 U.S. 250, 256

2   (2006) (the First Amendment prohibits government officials from subjecting an individual to

3   retaliatory actions, including criminal prosecutions, for speaking out); White v. Lee, 227 F.3d

4   1214, 1228 (9th Cir. 2000) (citations omitted) ("Informal measures, such as 'the threat of

5   invoking legal sanctions and other means of coercion, persuasion and intimidation,' can violation

6   the First Amendment also."). Accordingly, defendant's motion for summary judgment on the

7   grounds that he was not capable of executing the alleged threat should be denied.

8        At his deposition, plaintiff claimed that he was sent to state prison sooner in retaliation for

9   filing the grievance. However, plaintiff offers no evidence in support of this claim. At his

10   deposition, plaintiff admitted that he could not prove that he was sent to prison sooner in

11   retaliation for filing his grievance. (Plaintiff's deposition at 57.) Accordingly, defendant Her

12   should be granted summary judgment as to plaintiff's claim that he was sent to prison sooner in

13   retaliation for pursuing his grievance because there is no evidence supporting this claim.

14        *Did Defendant's Threats Chill Plaintiff's First Amendment Rights?*

15        Defendant moves for summary judgment on the grounds that his alleged threats did not

16   chill plaintiff's First Amendment rights because plaintiff did not drop his grievance after hearing

17   the alleged threats.

18        To succeed on his retaliation claim, plaintiff must demonstrate that defendant's action

19   would "chill or silence a person of ordinary firmness from future [protected] activities." Watison

20   v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012). Threats of criminal prosecution are the type of

21   threat that would chill a person of ordinary firmness from future protected activities. See Holland

22   v. Schuyler, 2018 WL 5880771, *2 (E.D. Cal. Nov. 8, 2018). Accordingly, the undersigned finds

23   that defendant is not entitled to summary judgment on the grounds that plaintiff did not drop his

24   grievance because defendant's alleged threats would chill a person of ordinary firmness from

25   future protected activities.

26       VI.   Plaintiff's Fourteenth Amendment Retaliation Claim

27        In the complaint, plaintiff alleges that defendant Her retaliated against him in violation of

28   the Fourteenth Amendment. As discussed above, retaliation claims are analyzed under the First

1    Amendment.  Defendant argues that plaintiff's Fourteenth Amendment claim should be dismissed

2    because plaintiff has not alleged a violation of his Fourteenth Amendment rights.

3            The undersigned finds that plaintiff incorrectly identified his retaliation claim as alleging a

4    violation of his Fourteenth Amendment rights.  It is clear that plaintiff did not intend to allege a

5    separate Fourteenth Amendment claim.  Rather, it is clear that plaintiff intended to raise only a

6    retaliation claim in violation of his First Amendment rights.  Nevertheless, in an abundance of

7    caution, the undersigned will recommend dismissal of the Fourteenth Amendment claim

8    identified in the complaint in order to clarify the claims on which this action proceeds.

9            Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall appoint a

10   district judge to this action; and

11           IT IS HEREBY RECOMMENDED that defendant's summary judgment motion (ECF

12   No. 33) be granted as to plaintiff's claim alleging that defendant Her violated his Eighth

13   Amendment rights when he released plaintiff to breakfast and as to plaintiff's claim alleging that

14   defendant retaliated against him in violation of the Fourteenth Amendment; defendant's summary

15   judgment motion should be denied in all other respects.

16           These findings and recommendations are submitted to the United States District Judge

17   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

18   after being served with these findings and recommendations, any party may file written

19   objections with the court and serve a copy on all parties.  Such a document should be captioned

20   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

21   objections shall be filed and served within fourteen days after service of the objections.  The

22   parties are advised that failure to file objections within the specified time may waive the right to

23   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

24   Dated:  August 20, 2020

25

26                                                    _____
                                                     KENDALL J. NEWMAN
27   Mart1658.sj                                     UNITED STATES MAGISTRATE JUDGE

28